IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TARKENTON NEUHARDT, | : |
| | : |
| Plaintiff, | : Case No. 2:17-CV-1019 |
| | : |
| v. | : CHIEF JUDGE ALGENON L. MARBLEY |
| | : |
| CHARTER COMMUNICATIONS, | : Magistrate Judge Vascura |
| LLC, *et al.*, | : |
| | : |
| Defendants. | : |

## OPINION & ORDER

This matter is before the Court on Defendants Charter Communications, LLC and TWC Administration LLC's Motion for Summary Judgment. (ECF No. 33). The Court held oral argument on Defendants' Motion on January 15, 2020, at 10:00 a.m. For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED.**

### I. BACKGROUND

#### A. Factual Background

Tarkenton Neuhardt was hired by Defendant Spectrum, now Charter Communications, LLC ("Charter") and Time Warner Cable Administration, LLC ("TWCA"), as a Retail Sales Supervisor on or about May 23, 2014. (ECF No. 4 at ¶ 12). In March 2015, he took ADA leave due to carpal tunnel syndrome and returned in May 2015. (*Id.* at ¶¶ 15-17). When he returned, Spectrum had set new sales goals. (*Id.* at ¶ 19). Neuhardt advised his superiors that his department was understaffed and could not reasonably be expected to satisfy the new goals. (*Id.* at ¶¶ 21, 23). When he returned from leave, he also alleges his company car privileges were revoked. (*Id.* at ¶ 18).

1

On July 21, 2015, Neuhardt went on FMLA leave for his shoulder and returned on October 20, 2015. (ECF No. 4 at ¶¶ 21, 32). Also in July 2015, Spectrum investigated Neuhardt for leaking audit information to another store. (*Id.* at ¶ 26). Spectrum did not find evidence of leaked audit information, but did discover sexually explicit messages from Neuhardt to a lower-level female employee on the company's instant message system. (ECF No. 4 at ¶¶ 27-28; ECF No. 33 at 6).

Neuhardt sent the following messages to a female Retail Sales Specialist on the company instant message system:

> **Neuhardt, Tarkenton [1:59 PM]:**
> Mmm hmm...one time you denied me ..so really only saw me once.
> **Courtney, Megan [2:01 PM]:**
> no thats mean i didnt deny once i got there
> **Neuhardt, Tarkenton [2:03 PM]:**
> yes you did...actually you did until you felt it get hard and me turn you on
> **Courtney, Megan [2:09 PM]:**
> so…
> lol
> dont get me all stirred up
> **Courtney, Megan [2:17 PM]:**
> btw i leave at like 330-4
> so after that you will have to text me
> **Neuhardt, Tarkenton [3:33 PM]:**
> why is that.
> why are you leaving so early
> **Courtney, Megan [3:34 PM]:**
> so i can get home at 5 since i get off at 5 and v pays me to drive home
> its ok grandpa i will be here tomorrow :D
> **Neuhardt, Tarkenton [3:35 PM]:**
> huh
> grandpa
> **Courtney, Megan [3:35 PM]:**
> LMAO!!!!
> Sir you have to understand the term grandpa
> lol
> **Neuhardt, Tarkenton [3:35 PM]:**
> i don't

>means old
>**Courtney, Megan [3:36 PM]:**
>yes you can be my grandpa lol
>**Neuhardt, Tarkenton [3:36 PM]:**
>oh you want some old balls in ya face huh
>**Courtney, Megan [3:37 PM]:**
>hahahah
>omg
>youre awful
>**Neuhardt, Tarkenton [3:37 PM]:**
>hahahahaha..u said it.

(Neuhardt Dep. Ex. 2 at CHARTER000031). In July 2015, the day before he went on FMLA leave, Neuhardt was asked to meet with a Human Resources representative, Julie Tucker. (Neuhardt Dep. at 101:18-19). Ms. Tucker talked about the audit investigation and also brought up the instant messages with Ms. Courtney. (Neuhardt Dep. at 104:18-20). She went over them "line-by-line" with Neuhardt and made clear that "she found it or HR found this inappropriate." (Neuhardt Dep. at 106:1; 106:17-18). When he returned from FMLA leave on October 20, 2015, Neuhardt was asked to meet with Human Resources and was informed that he was being terminated. (ECF No. 4 at ¶ 33-34).

Neuhardt alleges that Spectrum has a progressive discipline policy beginning with a verbal and then written warning, which he did not receive. (ECF No. 1 at ¶¶ 42-43, 44-46). He also claims he did not receive hard copies of the company policies. (ECF No. 38 at 2). Company policy requires electronic communications be limited to "work related conversations." (ECF No. 33 Ex. 5 at CHARTER000804). The company handbook also prohibits harassment ("[a]ctions, words, displays of explicit or offensive written or pictorial material, jokes, or derogatory or offensive comments…"). (ECF No. 33 Ex. 4 at CHARTER000770). The handbook lists harassment as a "major work rule" that "will not be tolerated." (ECF No. 33 Ex. 6 at CHARTER000812). The company's progressive discipline policy states "[c]orrective action may

be progressive" but "will be commensurate with the offense committed" and the company "reserves the right to take corrective action when appropriate and to discharge any employee for any reason." (ECF No. 33 Ex. 3 at CHARTER000002).

### B. Procedural Background

Neuhardt filed his complaint in state court in October 2017, alleging the reason for his firing was pretext for gender and disability discrimination under Ohio Rev. Code § 4112.02, and that he was retaliated against in violation of the Family and Medical Leave Act ("FMLA"). (ECF No. 4). Defendants removed the case to federal court in November 2017. (ECF No. 3). On July 15, 2019, Defendants filed this Motion for Summary Judgment. Plaintiff filed his Response to the Motion on August 27, 2019, and Defendants filed their Reply on October 1, 2019. Defendants' Motion for Summary Judgment is now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).

A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical

doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Id.* (quoting *Anderson*, 477 U.S. at 250).

### III.    LAW & ANALYSIS

Defendants seek summary judgment on all three of Plaintiff's claims. (ECF No. 33). They contend that Neuhardt has failed to make a prima facie case for gender or disability discrimination under Ohio Rev. Code § 4112.02 or for retaliation under the FMLA. In the alternative, they argue that even if the Court finds Plaintiff has made out a prima facie case for any of his claims, he is not able to prove pretext to counter the legitimate, nondiscriminatory reason for his firing, which Defendants contend were his inappropriate messages to a lower-level female employee on the company instant message system.

## A. Prima Facie Case

For all three of his claims, Plaintiff bears the initial burden of establishing a prima facie case for discrimination and retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Greer v. Cleveland Clinic Health System-E. Region*, 503 Fed. Appx. 422, 428-29 (6th Cir. 2012). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonell Douglas*, 411 U.S. at 802-03. Plaintiff bears the ultimate burden of showing Defendants' legitimate, nondiscriminatory reason is merely pretext. *Id.* at 804.

### 1. Gender Discrimination O.R.C. § 4112.02

The Sixth Circuit, and this Court, have held that Ohio Rev. Code § 4112.02 is interpreted coextensively with Title VII. *See, e.g., Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) ("Ohio's requirements [under § 4112] are the same as under federal law"); *Wheeler v. City of Columbus*, 2019 WL 3753579, at *12 (S.D. Ohio Aug. 8, 2019) ("The Ohio Supreme Court has held that federal case law interpreting Title VII generally applies to O.R.C. § 4112"); *Hurst v. Village of Enon, Ohio*, 309 F.R.D. 432, 435 n.4 (S.D. Ohio 2015) ("Under Ohio law… [gender] discrimination claims under Ohio Revised Code § 4112 are analyzed according to the same standards used to analyze federal discrimination claims under Title VII").

Plaintiff has not put forward any direct evidence of gender discrimination, so he therefore must prove his case under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., McKenna v. Nestle Purina Petcare Co.*, No. C2-05-976, 2009 WL 891747, at *10 (S.D. Ohio Mar. 31, 2009). To establish a prima facie case for discrimination, Plaintiff must show that he was: (1) a member of a protected class; (2) subjected to an adverse employment action; (3) qualified for his position; and (4) replaced by a person

outside the protected class or treated differently than similarly-situated employees outside of the protected class for the same or similar conduct. *E.g., Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006); *Morrow v. Am. Bag Corp.*, 23 F. App'x 450, 454-55 (6th Cir. 2001). The burden then shifts to Defendants to demonstrate a "legitimate, nondiscriminatory reason" for the adverse treatment. *Wright*, 455 F.3d at 702 (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If Defendants satisfy this burden, Plaintiff bears the ultimate burden of proving by a preponderance of the evidence that Defendants' legitimate, nondiscriminatory reason was pretext for discrimination. *Id.*

Defendants first argue that Neuhardt has failed to establish a prima facie case for gender discrimination because he has not met the fourth prong—i.e., he has not identified an adequate comparator to show he was treated differently from similarly situated employees on the basis of his gender. (ECF No. 33 at 9-10). Plaintiff alleges that Megan Courtney, the lower-level female employee to whom he sent sexually explicit, harassing messages, is a similarly situated employee because she is bound by the same employee code of conduct. (ECF No. 38 at 13). He argues that Defendants' failure to fire Courtney, who is female, is sufficient to make out a prima facie case for gender discrimination. (ECF No. 38 at 12-13).

An employee is an appropriate comparator if they are similarly situated "in all *relevant* respects" including "engaged in acts of comparable seriousness." *Dickens v. Interstate Brands Corp.*, 384 F. App'x 465, 468 (6th Cir. 2010) (internal quotations omitted). This Court finds Plaintiff has failed to establish a prima facie case for gender discrimination because he has not identified any appropriate comparator. Megan Courtney is not an appropriate comparator because she neither held the same job or level of supervisory authority, nor was she engaged in the same type and level of seriousness of misconduct. (ECF No. 43 at 3). *See Pierce v.*

7

*Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (*abrogated on other grounds by Carter v. Toyota Tsusho America, Inc.,* 529 Fed. App'x 601, 610 (6th Cir. 2013)). Ms. Courtney worked as a retail sales specialist and was not a supervisor. Neuhardt testified that he understood supervisors were to adhere to the highest standards of conduct. (Neuhardt Dep. at 166:9-167:12). Furthermore, Ms. Courtney was on the receiving end of Neuhardt's sexually explicit and inappropriate messages, and she cannot be said to have engaged in acts of comparable seriousness. *See McKenna*, 2009 WL 891747, at *11 ("[proposed comparator] was not 'similarly situated' to [Plaintiff] because she did not deal with the same supervisor…, nor did they share the same position or job duties…[and she] did not engage in the same conduct").

### 2. Disability Discrimination O.R.C. § 4112.02

Like gender discrimination claims, disability discrimination claims under Ohio Rev. Code § 4112.02 are analyzed under the same standards as federal disability discrimination law. *See Knapp v. City of Columbus*, 192 Fed. App'x 323, 328 (6th Cir. 206) (citing *Columbus Civil Serv. Cmm'n v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998)). Plaintiff likewise has not put forth any direct evidence of disability discrimination. He only puts forth indirect evidence related to the temporal proximity of his ADA and FMLA leave and his adverse employment actions. Like his gender discrimination claim, the Court analyzes his Ohio Rev. Code § 4112.02 disability claim under the *McDonnell Douglas* burden shifting framework. To establish a prima facie case of disability discrimination using indirect evidence, Plaintiff must show: (1) that he was disabled; (2) that an adverse employment action was taken against him by an employer, at least in part, because he was disabled; and (3) that he could safely and substantially perform the essential functions of his job. *Kittle v. Cynocom Corp.*, 232 F. Supp. 2d 867, 875-76 (S.D. Ohio 2002) (citing *McGlone,* 82 Ohio St. 3d at 697)). If Neuhardt is able to make out a prima facie

case, the burden shifts to Defendants to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 877. If Defendants meet this burden, Neuhardt has the ultimate burden of proving by a preponderance of the evidence that Defendants' reasons are pretextual. *Id.* at 878.

Defendants argue that Plaintiff failed to make out a prima facie case for disability discrimination because he cannot satisfy either of the first two prongs. (ECF No. 33 at 13-14). First, Defendants argue Neuhardt is not disabled as a matter of law. "Disability" is defined under 42 U.S.C. § 12102(1) as: "(A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such impairment; or (C) being regarded as having such impairment." Neuhardt argues he suffered impairments from his carpal tunnel syndrome and ulnar nerve surgery and shoulder surgery, including sleeping four to five hours a night and numbness in his right elbow. (ECF No. 38 at 14). Defendants argue Plaintiff is not disabled because he admits he returned to work with no restrictions. (Neuhardt Dep. 45:12-16; 46:15-25).

Second, Defendants argue Neuhardt has not alleged a causal connection between a purported disability and an adverse employment action. Plaintiff alleges that another employee, Virginia Britsche, was not disabled and still had her company car when Neuhardt's was taken from him after he returned from ADA leave. (ECF No. 38 at 15). He also says Megan Courtney was similarly situated and not disabled and was not terminated for her involvement in sending the online messages. (*Id.*). Defendants argue Virginia Britsche is not similarly situated because Plaintiff has not shown any evidence that she was disabled or perceived by the employer to be disabled, or that she had access to a company car. (ECF No. 43 at 5).

This Court concludes that there may be a genuine issue of fact with respect to whether Neuhardt is actually disabled, but that he has still failed to establish his prima facie case because he has not shown causation. With respect to his disability, Neuhardt has claimed, and Defendants do not dispute, that Neuhardt was diagnosed with carpal tunnel syndrome and took ADA leave related to this condition, and then FMLA leave for his shoulder surgery. There may be a genuine issue of fact as to whether Neuhardt was still disabled upon returning to work or whether his employer regarded him as such, but he alleges he continued to suffer from impairments. However, Neuhardt has not demonstrated that any adverse employment actions were causally connected to his alleged disability. Megan Courtney is not a similarly situated employee for the same reasons articulated above; she does not have the same supervisory responsibilities and was not engaged in the same severity of conduct as Neuhardt. Plaintiff acknowledges that he does not have "substantiated facts" to support his claim that other employees had access to a company car, only "murmurings that one in particular did often." (Neuhardt Dep. at 54:19-22). Neuhardt's testimony that he heard "murmurings" that Virginia Britsche had access to a company car and his own declaration that she was not disabled does not provide sufficient evidence to show his purported disability was the cause of any adverse employment actions. (Neuhardt Dep. at 54:14-54:25; Neuhardt Decl. at ¶ 22). Because Neuhardt does not have personal knowledge of whether Britsche is disabled or had access to a company car, he has not shown causation. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014) (substance of declaration at summary judgment cannot rely on hearsay); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("an affidavit offered in opposition to summary judgment 'shall be made on personal knowledge'" (quoting Fed. R. Civ. P. 56(e)).

### 3. FMLA

To make out a claim for FMLA retaliation, Neuhardt must show that: "(1) he was engaged in a protected FMLA activity; (2) the employer knew he was exercising his rights under the Act; (3) after learning of the employee's exercise of his FMLA rights, the employer took adverse employment action against him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. If the plaintiff establishes a prima facie case for FMLA retaliation, we then again apply the familiar McDonnell Douglas burdenshifting framework." *Greer*, 503 Fed. Appx. at 428-29.

Defendants argue that Neuhardt has failed to make out a prima facie case for FMLA retaliation because he has not shown any causal connection between his FMLA leave and his termination. (ECF No. 33 at 16). They argue that temporal proximity alone is not sufficient. (*Id.*). In the alternative, Defendants argue that even if Neuhardt can establish a prima facie case for discrimination, like his gender and disability claims, he has not shown any evidence of pretext. (*Id.* at 17-18). Plaintiff argues the fact that he was terminated the day he returned from his FMLA leave is evidence to support his prima facie case. (ECF No. 38 at 8). He argues temporal proximity is enough because he cannot show he was treated differently after his FMLA ended, due to his immediate termination. (*Id.*).

The Court finds that Plaintiff has not met his burden of showing a prima facia case of FMLA retaliation because he has not shown causation. Despite his arguments otherwise, the fact that Plaintiff was terminated upon his return from FMLA leave does not change Plaintiff's burden of showing causation. The Sixth Circuit has explained "that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case." *Newton v. Ohio Dept. of Rehab. And Correction-Toledo Correctional Inst.*, 496 Fed. App'x. 558, 567 (6th Cir. 2012) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 355 (6th Cir. 2007)). Neuhardt has not put forth any

evidence other than temporal proximity to further his claim of FMLA retaliation. The Sixth Circuit "has made it clear that temporal proximity alone will not support an inference of retaliatory discrimination where there is no other compelling evidence." *Blume v. Potter*, 289 Fed. App'x. 99, 106 (6th Cir. 2008). Therefore, Plaintiff has failed to establish his prima facie case because he has failed to show a causal connection between his termination and FMLA leave.

## B. Pretext

Even if Plaintiff was able to establish a prima facie case for any of his claims, he would have to show by a preponderance of the evidence that Defendants' legitimate, nondiscriminatory reason for terminating him was pretextual. Plaintiff can demonstrate pretext in three ways: "(1) that the proffered reason has no basis in fact; (2) that the proffered reason did not actually motivate the termination; or (3) that the proffered reason was insufficient to motivate discharge." *McKenna*, 2009 WL 891747, at *6 (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)). Neuhardt does not deny sending the messages to Ms. Courtney. Rather, he claims the proffered reason for his termination has no basis in fact because there is a genuine issue of material fact as to whether his messages were inappropriate. (ECF No. 38 at 10). Further, he argues there is a genuine issue of material fact as to whether TWCA violated its own policies by not following a progressive discipline system. (*Id.*).

Neither of these claims is sufficient to create a genuine issue of material fact for trial. This Court rejected similar arguments by Plaintiff in *McKenna*, finding that "[a]lthough McKenna may personally feel he is free to discuss whatever he wants at work, any reasonable person would recognize that sex is a taboo topic that should not be discussed over work emails." 2009 WL 891747, at *6. There is no evidence that Neuhardt's termination was motivated by

discrimination on the basis of his gender. The only evidence to support his disability discrimination and FMLA retaliation claims is the temporal proximity of his ADA and FMLA leave to his adverse employment actions. This alone is not sufficient to support a finding of pretext. Rather, the evidence supports that TWCA had a basis in fact for determining Neuhardt's sexual messages to a subordinate female employee on the company instant message system were inappropriate and offensive in nature and violated company policy.

Nor does Time Warner Cable's decision to terminate Neuhardt in the October 2015 meeting constitute evidence of pretext. The company policy makes clear that "[c]orrective action may be progressive" but "will be commensurate with the offense committed" and the company "reserves the right to take corrective action when appropriate and to discharge any employee for any reason." (ECF No. 33 Ex. 3 at CHARTER000002). Sexual harassment is a major work rule, and TWCA exercised its discretion, which is contemplated under the policy, to proceed immediately to terminating Neuhardt based on the offense. TWCA's decision to terminate Neuhardt for the offensive messages, rather than issue a warning, is not evidence that its decision was based on a discriminatory motive.

For these reasons, this Court finds that even if Plaintiff is able to make out a prima facie case for any of his claims, he has failed to show that Defendants' legitimate, nondiscriminatory reason for his termination was pretextual.

### IV. CONCLUSION

For the foregoing reasons, Defendants Charter Communications, LLC and TWC Administration LLC's Motion for Summary Judgment is **GRANTED**. This case is hereby DISMISSED.

**IT IS SO ORDERED.**

                                              **s/Algenon L. Marbley**
                                      **ALGENON L. MARBLEY**
                                      **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: March 2, 2020**